[No. 9687.  Department Two.  August 10, 1911.]

## THE STATE OF WASHINGTON, *on the Relation of Frank Nelson, Plaintiff*, v. JOHN B. YAKEY, *Judge, etc., Respondent.*[1]

JUDGES—DISQUALIFICATION — AFFIDAVIT OF PREJUDICE — EFFECT—
PRACTICE. An affidavit of prejudice, under Laws 1911, p. 617, § 1,
providing that the judge shall forthwith transfer the cause for
trial to another judge or court, does not deprive the judge of
jurisdiction until it is formally called to his notice, under the
practice of bringing pleadings to the attention of the court by no-
tice to the opposite party and notation thereof on the clerk's docket.

SAME—JURISDICTION—NOTICE TO JUDGE. A judge will not be held
to have arbitrarily held jurisdiction of a cause after an affidavit
of prejudice is filed, when there is a disputed question of fact as
to his notice thereof, and the clerk's record shows no notice.

SAME—JURISDICTION—CONSTRUCTION OF STATUTE. On filing an
affidavit of prejudice, under Laws 1911, p. 617, the trial judge has
jurisdiction to maintain the *status quo* by continuing pending hear-
ings, or setting the date for future hearings; as the statute should
not be so construed that it will operate to defeat or delay the prog-
ress of a case.

Application filed in the supreme court July 21, 1911, for
a writ of prohibition to the superior court for Kitsap county,
Yakey, J., to compel the assignment of a cause to another
judge for trial, and to prevent the making and enforcement
of certain orders therein.   Denied.

*Bryan & Ingle*, for relator.
*Jas. W. Carr*, for respondent.

[1]Reported in 117 Pac. 265.

CHADWICK, J.—On the 9th day of June, 1911, there was pending in the superior court for Kitsap county an action wherein Sarah Nelson is plaintiff and Frank Nelson is defendant. On that day one of the attorneys for defendant had filed a motion for a change of judge, under the act of March 18, 1911. Laws 1911, p. 617. On July 1, a supplemental affidavit was made under the same statute. On July 10, Judge Yakey, the respondent here, against whom the affidavit had been directed, granted an order restraining defendant Nelson, the relator, from going to the home occupied by plaintiff, and from in any manner harrassing or annoying her. An order to show cause why the order should not continue *pendente lite* was made returnable on July 15. On that day, the matter coming on before Judge Yakey and the objection to his jurisdiction being urged, he made an order continuing the hearing until July 31, at which time it seems to be conceded that another judge was to be called in to hear and determine the matter then pending. At this point, the controversy, of which the Nelson case is but an incident, was brought to this court upon the application of the relator for a writ of prohibition, with incidents having the character of mandamus, as will be seen by reference to his prayer:

"(1)   To make an order forthwith assigning the said cause of Sarah Nelson, plaintiff, vs. Frank Nelson, defendant, to some other judge for trial.

"(2)   To cancel and hold for naught that certain restraining order and show cause made in said action on July 10, 1911, and thereafter continued on July 15, 1911.

"(3)   To command the said judge to desist from making or enforcing or attempting to make or enforce any order or orders in the said cause."

The cause came on for hearing before us on August 4, and from the affidavits and return we find that this proceeding arises out of a dispute of fact.

The attorneys for the relator insist that the Nelson case was called by the court on June 26, at which time respondent's attention was called to the affidavit of prejudice, and he

then said that he would not make a definite ruling, but would probably grant a change of venue in all cases where such affidavits had been filed; that notwithstanding such ruling, the court did make the show-cause order even after the supplemental affidavit of prejudice had been made. The conduct of the attorneys for relator seems to have been consistent with the idea that they believed their motion had been called to the attention of the court. On the other hand, the return of the respondent shows, and in this he is supported by the silence of the clerk's record, that the Nelson case was not specially called to his attention, and that no order was made therein, and that at the time he made the show-cause order the motions for a change of judge had not been heard; that when they were brought to his notice, he at once disclaimed any purpose of participating in the case, and continued the case until another judge could be called in. The respondent is supported in his statement by the clerk's minutes, or rather by the lack of any minute or journal entry showing a hearing on June 26. Hence, we are called upon to construe the statute above cited, section 1 of which reads as follows:

"No judge of a superior court of the state of Washington shall sit to hear or try any action or proceeding when it shall be established, as hereinafter provided, that such judge is prejudiced against any party or attorney, or the interest of any party or attorney appearing in such cause. In such case the presiding judge shall forthwith transfer the action to another department of the same court, or call in a judge from some other court, or apply to the governor to send a judge, to try the case; or, if the convenience of witnesses or the ends of justice will not be interfered with by such course, and the action is of such a character that a change of venue thereof may be ordered, he may send the case for trial to the most convenient court." Laws 1911, p. 617, § 1.

The power of the judge against whom the affidavit is directed is the first question to consider. Under the practice prevailing in this state, of bringing the pleadings and files in a case to the attention of the court by notice to the oppo-

site party and a notation thereof on the court's docket, it must be held that, until the affidavit of prejudice is formally called to the attention of the judge, he may, with all propriety, proceed to make any order which in his judgment is proper to be made. However, after the affidavit has been brought to the attention of the judge, his power to proceed, and the limit of his power finds bounds in the statute, he can only "forthwith transfer the action to another department," etc. Under the record here presented, the parties differing radically as to the fact, we cannot hold, in the light of the clerk's record and the order of July 15, that respondent has acted arbitrarily or with any desire to hold jurisdiction over the objections of the relator.

The next question is, Did the respondent have jurisdiction—the motion for a change of judges having been brought to his attention on July 15—to continue the temporary restraining order until it could be heard by another judge? Our former discussion would seem to be a sufficient answer, for manifestly, his power to act not having been arrested at the time the order was made, he would have the right to hold the parties and their property, if subjected to the jurisdiction of the court *in status quo* until the merit of the controversy could be tried by another. To hold otherwise would be to put it in the power of any litigant to defeat an order of the court formally entered, by attacking the fairness of the judge under the new statute.

Nor do the terms of the statute seem to warrant us in holding (whatever its design may have been) that the judge impugned could not make an order setting the case or any proceeding incidental thereto down for hearing at some future date. In the arguments of counsel too much importance is attached to the word "jurisdiction." The jurisdiction of the judge or of the court is not destroyed by the affidavit of prejudice. Giving it the sense in which it is here used, it does no more than arrest the power of the judge to pass upon

an issue or the merits of the case. It follows that we cannot hold that the respondent is guilty of any abuse because of his order continuing the show-cause order until ·July 31.

It is complained that July 31 has come and gone and no judge appeared to try the case; but for. this there may be, indeed the record suggests, a sufficient reason, for the prayer of relator's petition asks us to hold for naught respondent's show-cause order of July 10. It was a hearing upon this order that was set for July 31, and it no doubt occurred to the respondent that it would be idle to call another judge at a time when the effect of the order, as well as the order itself, had been brought to this court upon relator's application.

Finding, as we do, that the respondent has kept within the bounds of the statute, relator's petition is denied, and the cause is remanded with instructions to respondent to fix a new date for hearing the order to show cause, and to call another judge to hear the same.

This statute is novel and introduces a new rule of practice. Like almost all instruments designed for protection, the statute may be subject to abuse. We feel warranted, therefore, in saying that we are not disposed to give it a construction that will operate to defeat or delay the progress of a case in those counties where there is but one judge. When the motion is made, the judge should in all cases carefully consider that provision of the law wherein it is said, "if the convenience of witnesses or the ends of justice will not be interfered with . . . and the action is of such a character that a change of venue may be ordered, he [the local judge] may send the case for trial to the most convenient court;" for we may take judicial notice that it is not always convenient for a superior judge to do the bidding of another, or of the governor. More than this, the public has an interest in the dispatch of litigation, and to hold that a judge must journey from his own court to hear every motion, de-

murrer, or application for an order would tend to intolerable delay; and, if a case in its progress were handled by several judges, as it might be, to insufferable confusion.

Writ denied.

DUNBAR, C. J., ELLIS, CROW, and MORRIS, JJ., concur.